**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ZUNIR WILSON-WALKER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 24-4828** |
| | : | |
| **C/O GAMBONE, MAJOR MORYER, CERT. SGT. STABILE, KEALEY, LAW LIBRARY CLERK, CAPTAIN SMITH, MONTGOMERY COUNTY CORRECTIONAL FACILITY EMPLOYEES** | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                               **October 7, 2024**

  The incarcerated Zunir Wilson-Walker claims his present prison and several of its agents violated his civil rights beginning three months ago through sexual harassment, verbal threats, access to courts, and denying him copies and envelopes to mail legal documents over the past three months. We granted him leave to proceed without paying filing fees. Congress requires we now screen his allegations before serving state actors with his complaint. The Facility is not a state actor under civil rights law and we dismiss it with prejudice. Mr. Wilson-Walker also does not plead a basis for his remaining sexual harassment, verbal threats, denial of access to courts, and possible retaliation claims. We grant him leave to timely file an amended Complaint with allegations relating to his claims against other persons sufficient to proceed on his civil rights case consistent with today's detailed guidance.

**I.**  **Alleged pro se facts**

The Commonwealth transported Zunir Wilson-Walker to the Montgomery County Correctional Facility on July 9, 2024 while he awaits trial in the Montgomery County Court of Common Pleas.[1]

### *Sexual harassment.*

Corrections Officer Gambone sexually harassed Mr. Wilson-Walker during a body search on July 9, 2024 on intake at the Facility.[2] Corrections Officer Gambone became "[a] little touchy" while searching Mr. Wilson-Walker, making him feel uncomfortable. Corrections Officer Gambone required Mr. Wilson-Walker to strip and did a visual search, asking Mr. Wilson-Walker to "wiggle and jump up and down" and "turn around and face away from" Officer Gambone.[3] Mr. Wilson-Walker "felt strange" and noticed "excitement in [Corrections Officer Gambone's] voice."[4] Corrections Officer Gambone directed Mr. Wilson-Walker to squat three times and "laughed, smiled, licked his lips, and grabbed his crotch."[5] Corrections Officer Gambone then forced Mr. Wilson-Walker to sign his name on papers without giving him a chance to review the papers.

### *Verbal threats.*

Mr. Wilson-Walker filed a grievance on July 26 or 27, 2024 complaining about Corrections Officer Gambone's conduct during the intake search.[6] Housing Unit Supervisor Captain Smith questioned Mr. Wilson-Walker about the grievance.[7] Captain Smith did not "see[m] … to be concerned or care" about Mr. Wilson-Walker's allegations of sexual harassment but took Mr. Wilson-Walker to the Facility's medical department.[8] Captain Smith then took Mr. Wilson-Walker to his office, where Corrections Officer Gambone waited and "began to stare [Mr. Wilson-Walker] down" and intimidate him.[9] Other unidentified Corrections Officers have since looked at Mr.

Wilson-Walker "different[ly] and rude."[10] Mr. Wilson-Walker notified Montgomery County Victims Services but did not receive help.

Mr. Wilson-Walker went to the Facility's law library about a month later on August 22, 2024 to ask Library Clerk Kealey to make copies of his "private documents" detailing the sexual harassment by Corrections Officer Gambone on July 9, 2024.[11] Library Clerk Kealey made extra copies of Mr. Wilson-Walker's private documents and gave the copies to Facility Supervisor Major Moryer.[12] Supervisor Major Moryer, in the presence of Captain Baker and Sergeant Stabile, yelled at Mr. Wilson-Walker, told Mr. Wilson-Walker Corrections Officer Gambone is innocent of sexual harassment, and there is no evidence to support Mr. Wilson-Walker's allegation of sexual harassment by Corrections Officer Gambone.[13] Mr. Wilson-Walker told Major Moryer he did not feel comfortable speaking with Major Moryer and Major Moryer scares him.[14] Sergeant Stabile told Mr. Wilson-Walker not to raise his voice and talk over Major Moryer and physically intimidated Mr. Wilson-Walker.[15] Major Moryer and Sergeant Stabile threatened Mr. Wilson-Walker.[16] Both Major Moryer and Sergeant Stabile turned off their body cameras during the period of verbal aggression and threats and then turned their body cameras back on, forcing Mr. Wilson-Walker to say on camera he "feel[s] safe" and the "C/Os [are] not threatening [him]."[17] Mr. Wilson-Walker told Major Moryer he would go to the Facility's Warden to complain, but Major Moryer told Mr. Wilson-Walker the Warden will not "give a sh**" and otherwise threatened Mr. Wilson-Walker with moving him to special housing to "rot."[18]

Mr. Wilson-Walker requested unidentified Captains at the Facility provide him with an update about his Prison Rape Elimination Act (PREA) complaints between July 27 and August 20, 2024.[19] Mr. Wilson-Walker asked non-party Captain Baker for an update about his PREA

complaint but Captain Baker did not do so. Mr. Wilson-Walker alleges unidentified "staff" at the Facility are working together to hide his allegations of sexual harassment.[20]

Mr. Wilson-Walker complains unidentified staff at the Facility failed to "do their job" after he requested to speak to the Deputy Warden on multiple occasions.[21] An unidentified Sergeant John Doe threatened to put Mr. Wilson-Walker on the medical block with "crazy people" making him very uncomfortable and scared for his life.[22]

### *Law Library issues.*

Library Clerk Kealey violated Mr. Wilson-Walker's First Amendment right of access to the courts by denying him copies and envelopes to mail legal documents to this court and the Montgomery County Court of Common Pleas on August 27, 2024.[23] Mr. Wilson-Walker does not have money to pay for envelopes or copies and Library Clerk Kealey told him to wait until the first of the month when he would presumably have money in his prisoner account.[24]

Library Clerk Kealey read Mr. Wilson-Walker's private documents on August 22, 2024, made copies of his documents for her own use, is rude and disrespectful during library hours, uses foul language, curses at incarcerated individuals and calls them racist names, refuses to help incarcerated individuals, and shows favoritism to white incarcerated individuals while disrespecting Black individuals.[25]

Mr. Wilson-Walker alleges he filed a grievance about sexual harassment and verbal threats around August 22, 2024.[26] He gave the grievance to an unidentified Corrections Officer, who in turn gave the grievance to Captain Smith, who in turn gave the grievance to the Warden and Major Moryer.[27]

**II.     Analysis**

Mr. Wilson-Walker now seeks $465,000 in damages for mental health suffering and for mental health treatment, removal from the Facility, an order directing the verbal abuse toward him to stop, and be free from "any possible revenge" from Facility staff.[28] We granted Mr. Wilson-Walker's request to proceed without paying the filing fees after reviewing his sworn financial condition.[29]

Congress requires us to screen Mr. Wilson-Walker's allegations after granting him leave to proceed without paying the filing fees and because the incarcerated Mr. Wilson-Walker "seeks redress from a governmental entity."[30] Congress in section 1915(e)(2)(B) requires we dismiss his claim if the action "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief."[31] When considering whether to dismiss a complaint for failure to state a claim under section 1915(e)(2)(B), we apply the same standard provided in Federal Rule of Civil Procedure 12(b)(6).[32] Mr. Wilson-Walker must plead enough facts to state a claim for relief plausible on its face under Rule 12(b)6).[33] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[34] While "[t]he plausibility standard is not akin to a 'probability requirement,' it does require the pleading show 'more than a sheer possibility … a defendant has acted unlawfully.'"[35] "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient."[36] We are "mindful of our obligation to liberally construe a pro se litigant's pleadings … particularly where the pro se litigant is imprisoned."[37] We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[38] But "pro se litigants still must allege

sufficient facts in their complaints to support a claim" and "cannot flout procedural rules–they must abide by the same rules that apply to all other litigants."[39]

Mr. Wilson-Walker alleges violations of his civil rights by the Facility, Corrections Officer Gambone, Major Moryer, Sergeant Stabile, Library Clerk Kealey, Captain Smith, and "Montgomery County Correctional Facility Employees" under 42 U.S.C. § 1983.[40] Section 1983 itself is not a source of substantive rights; it is a vehicle to vindicate federal rights "elsewhere conferred."[41] To state a claim under section 1983, Mr. Wilson-Walker must allege (1) a person acting under color of state law committed the complained-of conduct; and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.[42]

**A. The Facility is not a "person" for civil rights liability.**

Mr. Wilson-Walker sued the Montgomery County Correctional Facility. The Facility is not a "person" capable of being sued within the meaning of section 1983.[43] We dismiss Mr. Wilson-Walker's claims against the Facility with prejudice.

**B. Mr. Wilson-Walker does not sufficiently state a civil rights claim against unidentified "Employees" of the Facility.**

Congress, through section 1983, imposes liability on a "person" who "subjects, or causes to be subjected" another person to a civil right violation. The state actor must have "personal involvement in the alleged wrongs" shown through allegations of "personal direction or … actual knowledge and acquiescence."[44] Mr. Wilson-Walker may not sue unidentified Facility "employees" generally without allegations of personal involvement in the alleged constitutional violations.

We dismiss claims against unidentified "Montgomery County Correctional Facility Employees" without prejudice for Mr. Wilson-Walker to amend his complaint against identified

Facility employees with personal involvement, personal direction, or actual knowledge and acquiescence in the alleged constitutional wrongs.

    **C.   We dismiss the First Amendment access to the courts claim against Library Clerk Kealey.**

Mr. Wilson-Walker claims the Facility's Library Clerk Kealey denied him access to the courts in violation of the First Amendment. The right of access to the courts is a fundamental constitutional right.[45] The Supreme Court grounds the constitutional basis for the right in the Privileges and Immunities Clause of Article IV, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment's Equal Protection and Due Process Clauses.[46]

The Supreme Court in *Bounds v. Smith* held the fundamental constitutional right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."[47] The Supreme Court clarified the limits of *Bounds* twenty years later in *Lewis v. Casey*.[48] The Court held *Bounds* did **not** establish a freestanding right to a law library or to legal access, but the "(already well-established) right to *access to the courts*."[49] In such cases, the Court held an incarcerated person must show "actual injury" from the alleged denial of access to the courts.[50] And the actual injury requirements "is not satisfied by just any type of frustrated legal claim," explaining nearly all of the access-to-courts claims in the *Bounds* line of cases involved attempts by incarcerated individuals to pursue direct appeals from their convictions or habeas petitions.[51] The "tools" required to be provided to incarcerated persons to access the courts "are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."[52]

The Court further clarified in *Christopher v. Hanbury* the parameters of the right of access to the courts four years after *Lewis*: "the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."[53] The incarcerated person must allege both an "anticipated or lost" claim and "the official acts frustrating the litigation."[54] And where, as here, an access-to-courts claim looks backward, "the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought."[55]

Our Court of Appeals analyzes access-to-courts claims under both the First and Fourteenth Amendments.[56] Mr. Wilson-Walker alleges Library Clerk Kealey denied him access to the courts when she did not allow him to make copies of his legal documents and give him envelopes to "send out [his] [section] 1983 lawsuit and additional mail to Montgomery County Courts."[57]

Incarcerated persons may only proceed on an access-to-courts claims in two types of cases: (1) challenges – direct or collateral – to their sentences; or (2) conditions of confinement.[58] And in these two types of cases, an incarcerated person claiming a prison official's actions prevented him from presenting a past legal claim must show (1) he suffered "actual injury," meaning he "lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim"; and (2) he has no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access claim.[59] An incarcerated person must allege the "underlying arguable claim well enough to show that it is 'more than mere hope,' and … must describe the 'lost remedy.'"[60]

Mr. Wilson-Walker fails to meet these pleading requirements. First, there is no First Amendment right to subsidized mail or photocopying.[61] Second, even if Library Clerk Kealey's conduct fell within the First Amendment, Mr. Wilson-Walker did not allege "actual injury" stemming from the alleged conduct—that is, he did not allege how denying him photocopies of

8

his legal documents and mailing envelopes impeded his efforts to pursue a "nonfrivolous" or "arguable underlying claim" under *Lewis*. There must be an allegation of an injury traceable to the conditions of which he complains. Third, Mr. Wilson-Walker's access-to-courts claim arises in the context of his pretrial detention on charges in Montgomery County where is he represented by counsel.[62] Mr. Wilson-Walker has full access to the courts through his counsel. His access-to-courts claim is not plausible as presently pleaded. We allow him an opportunity to timely amend if he can plead facts in good faith under the law.

### D. Mr. Wilson-Walker does not plausibly plead a Fourteenth Amendment sexual harassment claim.

Sexual abuse of incarcerated persons by persons working in correctional facilities may give rise to a claim for relief under the Eighth Amendment.[63] Because Mr. Wilson-Walker is a pretrial detainee, we analyze his claim as a Fourteenth Amendment excessive force claim requiring Mr. Wilson-Walker to allege facts plausibly showing objectively unreasonable actions by a defendant.[64] Mr. Wilson-Walker must allege "'the force purposely or knowingly used against him was objectively unreasonable,' meaning 'that the actions [were] not rationally related to a legitimate nonpunitive governmental purpose.'"[65] "Plausible allegations of sexual assault meet the standard of impermissible punishment because sexual assault cannot and does not serve a legitimate governmental objective."[66]

Mr. Wilson-Walker alleges Corrections Officer Gambone sexually harassed him during a body search on July 9, 2024 by becoming "[a] little touchy" when conducting the search and by laughing, smiling, licking his lips, and grabbing his (Corrections Officer Gambone's) crotch during a visual search, making Mr. Wilson-Walker feel uncomfortable.[67] Verbal taunting, lewd comments of a sexual nature, sexual propositioning, and conduct such as winking and gestures do not rise to a constitutional violation.[68]

Mr. Wilson-Walker's allegations fall short of the objectively unreasonable standard. Mr. Wilson-Walker alleges Corrections Officer Gambone became "a little touchy" during a body search on intake.[69] "Not every … malevolent touch by a prison guard gives right to a federal cause of action."[70] And touching during a body search on intake at the Facility does not rise to a constitutional violation.[71] Mr. Wilson-Walker alleges Corrections Officer Gambone "laughed, smiled, and licked his lips and grabbed his [own] crotch" but there is no allegation Corrections Officer Gambone assaulted Mr. Wilson-Walker or threatened him with physical assault. These allegations to not plausibly show objectively unreasonable actions.

We dismiss Mr. Wilson-Walker's sexual harassment claim without prejudice to timely amend if he can plead facts in good faith under the law.

**E. Verbal threats do not amount to a constitutional violation.**

We construe Mr. Wilson-Walker's complains about verbal threats as a retaliation claim for reporting Corrections Officer Gambone's July 9, 2024 alleged sexual harassment. "Government actions, which standing alone do not violation the Constitution, may nonetheless be constitutional torts if motivated in substantial party by a desire to punish an individual for exercise of a constitutional right."[72] Mr. Wilson-Walker must allege (1) constitutionally protected conduct; (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness form exercising his constitutional rights; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him.[73]

Mr. Wilson-Walker alleges on August 22, 2024, Major Moryer, in the presence of non-party Captain Butler, and Sergeant Stabile, yelled at and threatened Mr. Wilson-Walker about reporting Officer Gambone's alleged sexual harassment and threatened to "throw [Mr. Wilson-Walker] in [a unit] to rot while he keep a close eye on [him] [sic]."[74] Mr. Wilson-Walker alleges Sergeant Stabile

10

threatened him by warning him not to raise his voice at Major Moryer and stepped towards him to intimidate him, making Mr. Wilson-Walker nervous, scared, and uncomfortable.[75] Mr. Wilson-Walker alleges both Major Moryer and Sergeant Stabile were verbally aggressive, repeatedly told him the "sexual harassment did not happen [and] that there [is] no proof" of it, and Sergeant Stabile threatened Mr. Wilson-Walker by saying if he did not deny the alleged sexual assault he is "going to be sorry."[76]

Mr. Wilson-Walker also alleges non-party Sergeant John Doe threatened to "put [him] on the medical block with crazy people" if he continued to ask to speak with the Facility's Deputy Warden.[77] And Mr. Wilson-Walker alleges Library Clerk Kealey "refuses to give inmates" generally "proper help without bashing them and saying hurtful things" and shows "favoritism to the white inmates but constantly disrespect[s] the [B]lack inmates."[78]

Assuming Mr. Wilson-Walker alleges constitutionally protected conduct, he still did not plead an adverse action. Our Court of Appeals in the prison context finds "several months in disciplinary confinement; denial of parole, financial penalties, and transfer to an institution whose distance made regular family visits impossible; and placement in administrative segregation that severely limited access to the commissary, library, recreation, and rehabilitative programs" sufficient to establish an adverse action.[79] Verbal threats and taunts, without more, are not sufficiently adverse to support a retaliation claim.[80]

We dismiss Mr. Wilson-Walker's retaliation claim based on verbal threats without prejudice to timely amend if he can plead facts in good faith under the law.

    F. **Alleged refusal to provide "updates" on a PREA complaint does not state a claim for a constitutional violation.**

Mr. Wilson-Walker alleges he requested updates on his PREA complaint from unidentified Captains at the Facility and non-party Captain Baker but no one gave him information.[81] Mr.

11

Wilson-Walker alleges unnamed staff at the Facility are "working together" to "not let any light get shown on this incident."[82]

Mr. Wilson-Walker does not identify the constitutional right allegedly deprived him to plausibly state a section 1983 claim. To the extent his claim is based on the PREA statute itself, there is no private right of action under the Act.[83] To the extent he alleges unidentified and non-party "Captains" at the Facility did not provide him with an "update" in violation of his Fourteenth Amendment rights, a failure to investigate without another recognizable constitutional right is insufficient to sustain a claim under section 1983.[84]

We dismiss claims based on a failure to investigate or update Mr. Wilson-Walker on his PREA complaint without prejudice to allege a failure coupled with a cognizable constitutional right.

## III. Conclusion

We dismiss Mr. Wilson-Walker's civil rights claims against the Montgomery County Correctional Facility with prejudice. We grant Mr. Wilson-Walker leave to amend his Complaint for his remaining allegations if he can do so in good faith.

---

[1] ECF 1. A docket search of Pennsylvania's Unified Judicial System shows Mr. Wilson-Walker is currently housed at the Montgomery County Correctional Facility awaiting trial on charges brought in Montgomery County. *See Commw. of Pa. v. Zunir A. Wilson-Walker*, CP-46-CR-0000337-2024 (Mont. Co.). Earlier this year, the Commonwealth detained Mr. Wilson-Walker at the George W. Hill Correctional Facility on charges pending in Delaware County. *See Commw. of Pa. v. Zunir Ata Wilson-Walker*, MJ-32244-CR-0000028-2024 (Del. Co.). Mr. Wilson-Walker sued the Facility and Delaware County under 42 U.S.C. § 1983 alleging civil rights violations on June 25, 2024 in a separate matter currently pending before us. *Wilson-Walker v. Williams*, No. 24-2773.

[2] ECF 1 at 2, § II.C.; 5, § IV.G.; 10 (using the pagination assigned by the CM/ECF docketing system).

---

[3] *Id.* at 10.

[4] *Id.*

[5] *Id.*

[6] *Id.* at 11.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* at 12.

[12] *Id.* at 12, 14.  Mr. Wilson-Walker alleges Library Clerk Kealy had no right to read or make copies of private documents he did not authorize her to make. *Id.* at 14.

[13] *Id.* at 12.

[14] *Id.*

[15] *Id.* at 13.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 12-14. Mr. Wilson-Walker believes he is in danger and "something bad is going to happen" to him by unidentified Corrections Officers and "management" because they are racists and are prejudiced against him.

[19] *Id.* "PREA" refers to the Prison Rape Elimination Act, 34 U.S.C. § 30302 *et seq.* ("PREA"). The Prison Rape Elimination Act is a federal statute detailing how incarcerated persons may report sexual abuse and harassment. *Prison Rape Elimination Act,* COMMONWEALTH OF PENNSYLVANIA, https://www.pa.gov/en/agencies/cor/resources/prison-rape-elimination-act.html (last visited Oct. 1, 2024).

[20] *Id.* at 16.

[21] *Id.* at 15.

[22] *Id.*

---

[23] *Id.* at 17.

[24] *Id.*

[25] *Id.* Mr. Wilson-Walker also alleges Library Clerk Kealy is "in charge of legal mail" and he believes "she would read" his legal mail, mail copies of it, and share the contents with unnamed Security Supervisors. He is afraid Library Clerk Kealy will cause "something [to be] done to [him]" and cause harm in [his] life." *Id.*

[26] ECF 1 at 4, § E.

[27] *Id.*

[28] *Id.* at 5-6, § V. Mr. Wilson-Walker alleges he told Major Moryer, Captain Stabile, and other Facility officials he does not feel safe and seeks removal from the Facility. Mr. Wilson-Walker's mention of his hope to be transferred based on the alleged sexual assault also does not, at this stage, state a claim. He does not have a constitutional right to a particular correctional facility. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (the Constitution does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State …"); *Aliahmed v. Troxler,* 839 F. App'x 675, 677 (3d Cir. 2021) (per curiam) (there is no cognizable liberty interest in being confined in any particular institution); *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 225-26 (3d Cir. 2015) (an inmate does not have the right to be placed in any particular prison and a state has broad authority to confine an inmate in any of its institutions). Under Pennsylvania law, "[a]n inmate does not have a right to be housed in a particular facility or in a particular area within a facility." 37 Pa. Code § 93.11(a)

Mr. Wilson-Walker may plead, if the facts and present risks confirm after exhausting his internal grievance process, a failure to protect by identified state actors in the Facility by swearing as to facts allowing us to plausibly infer (1) he is "incarcerated under conditions poising a substantial risk of serious harm" and (2) a prison official acted with "deliberate indifference" to his health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). As a pretrial detainee, any challenge by Mr. Wilson-Walker to the conditions of his confinement are considered under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *Burton v. Kindle*, 401 F. App'x 635, 637 (3d Cir. 2010) (per curiam) (citing *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979)). The "proper inquiry" under the Fourteenth Amendment is "whether [the challenged] conditions amount to punishment of the detainee." *Id.* at 637 (quoting *Bell*, 441 U.S. at 535). Where a pretrial detainee challenges a prison official's "episodic acts or omissions," rather than the "general conditions, practices, rules, or restrictions of pretrial confinement," the pretrial detainee must plead a prison official acted with deliberate indifference. *Id.*

[29] ECF 6.

[30] 28 U.S.C. § 1915A(a).

[31] 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

14

---

[32] *Elansari v. Univ. of Pa.,* 779 F. App'x 1006, 1008 (3d Cir. 2019) (citing *Allah v. Seiverling,* 229 F.3d 220, 223 (3d Cir. 2000)). A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[34] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[35] *Riboldi*, 781 F. App'x at 46 (quoting *Iqbal*, 556 U.S. at 678).

[36] *Id.*

[37] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (first quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011); then citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

15

---

[38] *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala*, 704 F.3d at 244). Under Rule 8(e), "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). We are directed by our Court of Appeals this liberal standard is "even more pronounced" where, as here, a plaintiff files a complaint pro se, without assistance of counsel, to "protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (first quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); then citing *Higgs*, 655 F.3d at 339).

[39] *Yogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).

[40] ECF 1. Section 1983 provides, in relevant part: "Every person who, under color of any statute … of any State …, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, …." 42 U.S.C. § 1983.

[41] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

[42] *Schneyder v. Smith,* 653 F.3d 313, 319 (3d Cir. 2011).

[43] *Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (per curiam) (affirming dismissal of claims against a county prison because the prison is not a person capable of being sued under section 1983) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)); *see also Mercer-Spencer v. Spencer*, No. 24-824, 2024 WL 1704702, at *2 (E.D. Pa. Apr. 19, 2024) (dismissing with prejudice claims against Berks County Jail System because it is not a "person" under section 1983) (collecting cases); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. 2009) (a prison or correctional facility is not a "person" subject to suit under federal civil rights laws) (collecting cases).

[44] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[45] *Lewis v. Casey*, 518 U.S. 343, 350 (1996).

[46] *Christopher v. Harbury*, 536 U.S. 403, 415, n. 12 (2002) (collecting cases).

[47] 430 U.S. 817, 828 (1977) (footnote omitted).

[48] *Lewis*, 518 U.S. at 349–55.

[49] *Id.* at 350 (emphasis in original).

[50] *Id.* at 351–52.

[51] *Id.* at 354.

[52] *Id.* at 355.

[53] *Christopher*, 536 U.S. at 414–15.

[54] *Id.* at 415.

[55] *Id.*

[56] *See e.g. Heleva v. Walter*, No. 22-1762, 2022 WL 3657185, at * 1 (3d Cir. Aug. 25, 2022) (per curiam) (mishandling of legal mail in the prison); *Prater v. City of Phila.*, 542 F. App'x 135, 137 (3d Cir. 2013) (per curiam) (denial of access to law library); *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (confiscated legal materials).

[57] ECF 1 at 17.

[58] *Monroe*, 536 F.3d at 205 (citing *Lewis*, 518 U.S. at 346).

[59] *Id.* (quoting *Christopher*, 536 U.S. at 415).

[60] *Id.* at 205–06 (quoting *Christopher*, 536 U.S. at 416–17) (footnote omitted).

[61] *Schreane v. Holt*, 482 F. App'x 674, 676 (3d Cir. 2012) (quoting *Reynolds v. Wagner*, 128 F. 3d 166, 183 (3d Cir. 1997)).

[62] We may take judicial notice of the public docket sheets from his criminal action confirm attorney Shawn Kendricks Page Sr. is privately retained counsel. *See Commw. of Pa. v. Wilson-Walker*, CP-46-0000338-2024 at 3 (Mont. Co.).

[63] *Ricks v. Shover*, 891 F.3d 468 (3d Cir. 2018).

[64] *E.D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019) (quoting *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008)); *Chin v. Warfel*, No. 23-4220, 2024 WL 665536, at *4 (E.D. Pa. Feb. 15, 2024).

[65] *Clark v. Doe-Walker*, No. 19-2235, 2020 WL 564756, at *2 (E.D. Pa. Feb. 5, 2020) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015) (cleaned up)).

[66] *White v. Massini*, No. 22-1230, 2022 WL 1103793, at *3 (E.D. Pa. Apr. 13, 2022).

[67] ECF 1 at 10.

[68] *Pickett v. Williams*, No. 23-1411, 2023 WL 3044589, at * 5 (E.D. Pa. Apr. 21, 2023) (dismissing Eighth Amendment for sexual abuse and harassment where allegations are based on lewd comments with no sexual contact) (collecting cases); see also *Chin*, 2024 WL 665536 at *4 (citing *Gibson v. Flemming*, 836 F. App'x 860, 863 (3d Cir. 2020) (per curiam) (affirming summary judgment in favor of corrections officers and prison officials on Eighth Amendment excessive force and sexual harassment claims)).

[69] ECF 1 at 10.

---

[70] *Ricks*, 891 F.3d at 475 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

[71] *McIntyre v. Kellinger*, 741 F. App'x 891, 893 (3d Cir. 2018) (per curiam) (affirming summary judgment on Eighth Amendment sexual abuse claim based on routine body search).

[72] *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

[73] *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

[74] ECF 1 at 12-13.

[75] *Id.* at 13.

[76] *Id.*

[77] *Id.* at 15.

[78] *Id.* at 17.

[79] *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (first citing *Mitchell*, 318 F. 3d at 530; then citing *Rauser*, 241 F.3d at 333; and then citing *Seiverling*, 229 F.3d at 225 –26)).

[80] *Id.*

[81] ECF 1 at 16.

[82] *Id.*

[83] *Chin*, 2024 WL 665536 at *3.

[84] *Id.* (citing *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003)).