IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ZUNIR WILSON-WALKER** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 24-4828 |
| | : | |
| **C/O GAMBONE, MAJOR MOYER,** | : | |
| **LT. STABILE, LAW LIBRARY** | : | |
| **SUPERVISOR KEELEY DIANGELO,** | : | |
| **CAPTAIN SMITH** | | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                 **January 17, 2025**

      The incarcerated Zuhir Wilson-Walker alleges a correctional officer violated his civil rights during his July 9, 2024 intake at the Montgomery County Correctional Facility. We dismissed his pro se complaint approximately three months ago upon screening with leave to amend. He amended and repeated many of his same allegations but added privacy, conspiracy, and retaliation theories. We again screen consistent with Congress's mandate after granting him leave to proceed without paying filing fees. Mr. Wilson-Walker again does not state a claim on his repeated theories. He also does not plead facts allowing us to plausibly infer a privacy, conspiracy, or retaliation claim. We grant him one last chance to timely plead his claims hopefully informed by this Memorandum before we dismiss with prejudice.

**I. Alleged pro se facts**

      The Commonwealth detained Mr. Wilson-Walker at the Montgomery County Correctional Facility beginning July 9, 2024.[1]

                                   ***Corrections Officer Gambone's July 9, 2024 strip search.***

      Corrections Officer Gambone aggressively patted down Mr. Wilson-Walker during the July 9, 2024 intake at the Facility, touched Mr. Wilson-Walker in "personal spots," directed Mr. Wilson-

Walker to strip in the presence of another inmate in a small changing room, and directed Mr. Wilson-Walker to lift his genitals, jump up and down with his back to Corrections Officer Gambone, and "squat and cough."[2] Corrections Officer Gambone then "lick[ed] his lips and smiled at" Mr. Wilson-Walker when Mr. Wilson-Walker questioned the purpose of the intake search, a search Corrections Officer Gambone took "for his own pleasure."[3]

Corrections Officer Gambone directed Mr. Wilson-Walker to sign papers without giving Mr. Wilson-Walker a chance to read them or explain the papers.[4]

Corrections Officer Gambone then escorted Mr. Wilson-Walker and another incarcerated person to a body scanner to scan for contraband.[5] Mr. Wilson-Walker asked Corrections Officer Gambone why he "violated" Mr. Wilson-Walker during the strip search and made him feel uncomfortable, only to take Mr. Wilson-Walker for a body scan.[6] Corrections Officer Gambone ignored Mr. Wilson-Walker's questions.[7]

### Captain Smith's responses to Mr. Wilson-Walker's concerns.

Mr. Wilson-Walker asked non-party Facility Social Worker Carey for a grievance form to report the July 9, 2024 incident.[8] Social Worker Carey did not give Mr. Wilson-Walker a grievance form, so Mr. Wilson-Walker hand wrote a grievance on July 26, 2024 and gave it to an unnamed security staff supervisor.[9]

Captain Smith called Mr. Wilson-Walker to his office between midnight and 2:00 AM on July 27, 2024 to explain the basis of the grievance before Corrections Officer Gambone and a John Doe Corrections Officer.[10] Captain Smith looked "uninterested" in Mr. Wilson-Walker's grievance and "barely wrote down anything."[11] Corrections Officer Gambone looked at Mr. Wilson-Walker "dead in [his] eye with a[n] evil look," intimidating Mr. Wilson-Walker.[12] Mr. Wilson-Walker reported to Captain Smith sexual harassment by Corrections Officer Gambone.[13] Captain Smith

ignored Mr. Wilson-Walker's grievance and allowed Corrections Officer Gambone to continue to work on Mr. Wilson-Walker's housing unit instead of "preventing these things … not to happen again."[14]

The Facility's "mental health" put Mr. Wilson-Walker on medication to treat his trauma, post-traumatic stress disorder, depression, anxiety, and nightmares caused by the intake search conducted by Corrections Officer Gambone.[15] The Facility's security supervisors did not update Mr. Wilson-Walker on his grievance or how "the incident" would be handled going forward to prevent Corrections Officer Gambone from harming Mr. Wilson-Walker in retaliation for reporting the July 9, 2024 incident.[16] There is no allegation Corrections Officer Gambone took action to harm Mr. Wilson-Walker.

### *Law Librarian DiAngelo copying and review of Mr. Wilson-Walker's complaint.*

Mr. Wilson-Walker went to the Facility's law library on August 28, 2024 to prepare his civil rights complaint against the Facility based on the July 9, 2024 intake search and the failure of unnamed security supervisors to protect Mr. Wilson-Walker from Corrections Officer Gambone or other unnamed officers.[17] Mr. Wilson-Walker asked Law Librarian DiAngelo to make copies of his complaint.[18] Law Librarian DiAngelo read Mr. Wilson-Walker's complaint while making copies without his permission and secretly made a copy for herself.[19] Law Librarian DiAngelo then left the library and gave a copy of the civil rights complaint to Major Moyer.[20]

### *Major Moyer and Lt. Stabile verbal threats and housing in "max custody."*

Major Moyer then ordered Mr. Wilson-Walker to Major Moyer's office.[21] Lt. Stabile, present in Major Moyer's office, looked at Mr. Wilson-Walker with an intimidating and "evil glare."[22] Major Moyer yelled and cursed at Mr. Wilson-Walker and denied an officer harmed Mr. Wilson-Walker.[23] Major Moyer threatened Mr. Wilson-Walker with placement in "max

3

confinement to rot" with "murders, rapists, and serial killers" and to prevent Mr. Wilson-Walker from having access to the law library if Mr. Wilson-Walker "did not state [he] fe[lt] safe on camera."[24] Mr. Wilson-Walker refused to "lie on camera" and felt threatened by Major Moyer.[25] Lt. Stabile then threatened Mr. Wilson-Walker with physical harm.[26]

The Facility currently houses Mr. Wilson-Walker in its "max custody" unit with no access to the law library or the courts.[27] Mr. Wilson-Walker reported the incident with Major Moyer and Lt. Stabile to non-party Assistant Warden Burger the next day, but the Assistant Warden ignored Mr. Wilson-Walker's complaint.[28]

## II. Analysis

Mr. Wilson-Walker claims Corrections Officer Gambone, Major Moyer, Lieutenant Stabile, Law Librarian Keeley DiAngelo, and Captain Smith each violated his Fourth, Eighth, and Fourteenth Amendment rights from the date of his July 9, 2024 intake through August 29, 2024.[29]

As explained in our October 7, 2024 memorandum screening Mr. Wilson-Walker's original Complaint, Congress requires us to again screen the allegations of the amended Complaint after granting Mr. Wilson-Walker leave to proceed without paying the filing fees.[30] Congress in section 1915(e)(2)(B) requires we dismiss his claim if the action "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief."[31] When considering whether to dismiss a complaint for failure to state a claim under section 1915(e)(2)(B), we apply the same standard provided in Federal Rule of Civil Procedure 12(b)(6).[32] Mr. Wilson-Walker must plead enough facts to state a claim for relief plausible on its face under Rule 12(b)(6).[33] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[34] While "[t]he plausibility standard is not akin to a 'probability

requirement,' it does require the pleading show 'more than a sheer possibility … a defendant has acted unlawfully.'"[35] "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient."[36] We are "mindful of our obligation to liberally construe a pro se litigant's pleadings … particularly where the pro se litigant is imprisoned."[37] We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[38] But "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules–they must abide by the same rules that apply to all other litigants."[39]

Mr. Wilson-Walker now brings civil rights claims against the correctional officials based on the July 9, 2024 intake search and conduct thereafter he claims arises from his complaints about the July 9, 2024 conduct. He alleges Corrections Officer Gambone conducted an unreasonable strip search in violation of the Fourth Amendment, "licked his lips," laughed and smiled during the search "for his own pleasure" in violation of the Eighth Amendment, and sexually harassed him in violation of the Fourteenth Amendment; Captain Smith ignored Mr. Wilson-Walker's complaints about Corrections Officer Gambone's conduct during the July 9, 2024 intake search, and Captain Smith and Major Moyer conspired to place Mr. Wilson-Walker in "max confinement" in retaliation for reporting Corrections Officer Gambone all in violation of the Eighth Amendment; Lt. Stabile threatened Mr. Wilson-Walker in retaliation for reporting Corrections Officer Gambone, including restricting Mr. Wilson-Walker's access to "the outside world" and his attorney in violation of the Eighth and Fourteenth Amendments; and Law Librarian DiAngelo violated Mr. Wilson-Walker's privacy rights.[40]

Section 1983 (providing a remedy for a violation of constitutional rights) itself is not a source of substantive rights; it is a vehicle to vindicate federal rights "elsewhere conferred."[41] To state a claim under section 1983, Mr. Wilson-Walker must allege (1) a person acting under color

5

of state law committed the complained-of conduct; and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.[42]

### A. We dismiss privacy claims relating to the complaint against Librarian DiAngelo.

Mr. Wilson-Walker alleges Law Librarian DiAngelo violated his right to privacy by secretly making an extra photocopy of his complaint and giving the copy to Major Moyer. Mr. Wilson-Walker does not allege the basis of the alleged constitutional deprivation. There is no allegation Law Librarian DiAngelo's conduct prevented him from asserting a legal claim, withheld his legal papers, or opened legal mail outside his presence which may constitute a violation of his First Amendment right. There is no allegation Mr. Wilson-Walker suffered prejudice in pursing a legal claim or defense and so he does not state an access-to-courts claim.

We cannot determine the right of privacy Mr. Wilson-Walker believes Law Librarian DiAngelo violated in making her own copy of his draft complaint and showing it to Major Moyer. Mr. Wilson-Walker's first swore he went to the Law Library requesting copies of his "private documents" on August 22, 2024 – not August 28, 2024, as he now alleged in the amended Complaint.[43] The docket shows Mr. Wilson-Walker signed and dated his original Complaint on August 22, 2024, the same day as his visit to the law library. We dismiss his right of privacy claim against Law Librarian DiAngelo.

### B. We dismiss claims of excessive force, unreasonable strip search, and sexual harassment against Corrections Officer Gambone.

Mr. Wilson-Walker alleges Corrections Officer Gambone aggressively patted him down during the July 9, 2024 intake at the Facility, touched Mr. Wilson-Walker in "personal spots," conducted an unreasonable strip search in violation of the Fourth Amendment, "licked his lips," laughed and smiled during the search "for his own pleasure" in violation of the Eighth Amendment, and sexually harassed him in violation of the Fourteenth Amendment.

6

### 1. Allegations of a "very aggressive" pat down do not plausibly state an excessive force claim.

We liberally construe Mr. Wilson-Walker's allegation Corrections Officer Gambone "very aggressively [sic]" pat down on intake as a Fourth Amendment excessive force claim.[44] As we explained in our earlier screening memorandum, Mr. Wilson-Walker is required to allege facts plausibly showing objectively unreasonable conduct.[45] Objective reasonableness turns on "the facts and circumstances of each particular case" and we make this determination "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."[46] We must consider the "'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'"[47]

We already screened Mr. Wilson-Walker's allegation Corrections Officer Gambone "aggressively" did a pat down during intake and "touched" him in "personal spots." "Not every … malevolent touch by a prison guard gives right to a federal cause of action."[48] And touching during a body search on intake at the Facility does not rise to a constitutional violation.[49] Mr. Wilson-Walker does not allege facts to state a plausible claim against Corrections Officer Gambone for excessive force during the July 9, 2024 intake pat down. Mr. Wilson-Walker alleges only Officer Gambone "very aggressively" conducted a pat down and nothing more. We have no facts from which we may infer an objectively unreasonable use of excessive force. We dismiss the excessive force claim against Officer Gambone.

### 2. Mr. Wilson-Walker does not plausibly state unreasonable strip search and sexual harassment claims.

Mr. Wilson-Walker now appears to bring a new claim the strip search on intake is unreasonable in violation of the Constitution. Mr. Wilson-Walker does not have a Fourth or Fourteenth Amendment right to be free of strip searches conducted by prison officials without probable cause as long as the search is conducted in a reasonable manner.[50] In *Bell v. Wolfish*, the Supreme Court held the reasonableness of a search under the Fourth Amendment requires "a balancing of the need for the particular search against the invasion of personal rights that the search entails" and we are directed by the Supreme Court to "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."[51] "[I]t is constitutional to conduct a full strip search of an individual detained in a jail, regardless of the reason for detention or the existence of reasonable suspicion that the individual is concealing something."[52] Following *Bell,* the Supreme Court thirty-three years later in *Florence v. Board of Chosen Freeholders* held a Facility policy requiring pretrial detainees to expose their body cavities for visual inspection as part of a strip search does not violate the Fourth Amendment.[53] The Court reasoned those arrested for minor offenses may be among the detainees processed at detention facilities including a strip search on intake to uncover contraband which may go undetected by a pat down, metal detector, or other less invasive searches.[54]

Mr. Wilson-Walker does not allege facts to support an unreasonable strip search. Mr. Wilson-Walker appears to allege the fact Correctional Officer Gambone instructed him to lift his genitals and buttocks, jump up and down, turn around, squat and cough is per se unreasonable. This type of search attendant to a routine strip search upon intake does not violate the Fourth and Fourteenth Amendments consistent with the Supreme Court's holdings in *Bell* and *Florence*.

Mr. Wilson-Walker also alleges the strip search violates the Eighth Amendment and constitutes sexual harassment in violation of the Fourteenth Amendment because Correctional Officer Gambone "licked his lips," laughed and smiled after the strip search showing Officer Gambone conducted the strip search "for his own pleasure."[55] As we explained to Mr. Wilson-Walker in screening his original Complaint making the same allegations, Mr. Wilson-Walker must allege facts plausibly showing objectively unreasonable actions by a defendant.[56]

Mr. Wilson-Walker's renewed allegation Corrections Officer Gambone licked his lips, laughed, and smiled after the strip search does not rise to a constitutional violation. As we explained in our earlier memorandum, verbal taunting, lewd comments of a sexual nature, sexual propositioning, and conduct such as winking and gestures do not rise to a constitutional violation.[57] These allegations to not plausibly show objectively unreasonable actions.[58]

**C.  We dismiss failure-to-protect and conspiracy claims against Captain Smith.**

Mr. Wilson-Walker alleges Captain Smith violated, and conspired to violate, his Eighth and Fourteenth Amendment rights by ignoring Mr. Wilson-Walker's complaints about Corrections Officer Gambone and allowing Corrections Officer Gambone to continue to work on Mr. Wilson-Walker's unit "instead of preventing these things" from happening again.[59]

**1.  Mr. Wilson-Walker does not plausibly allege a failure to protect claim.**

We liberally construe Mr. Wilson-Walker's claim as a pretrial detainee against Captain Smith as a failure-to-protect claim under the Fourteenth Amendment.[60] To state a plausible failure to protect claim, Mr. Wilson-Walker must allege (1) a substantial risk of serious harm; (2) Captain Smith's deliberate indifference to that risk; and (3) causation.[61] Deliberate indifference is a subjective test; a prison official cannot be deliberately indifferent to a substantial risk of serious harm unless the official "knows of and disregards an excessive risk of inmate health or safety" and

9

is "both … aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[62]

Mr. Wilson-Walker's allegations as pleaded fail to state a failure to protect claim against Captain Smith. Mr. Wilson-Walker does not allege sufficient facts to raise a plausible inference Captain Smith knew of or disregarded an excessive risk to Mr. Wilson-Walker's safety. We have already determined the pat down and strip search conducted by Corrections Officer Gambone does not constitute excessive force, an unreasonable search, or sexual abuse or harassment. We dismiss a failure to protect claim against Captain Smith.

### 2.  Mr. Wilson-Walker does not plausibly plead a conspiracy claim.

Mr. Wilson-Walker alleges Captain Smith "also conspired with violating my 8th Amendment right and 14th [Amendment] right when I informed [Captain Smith] of what's going on …"[63]

To state a plausible claim of conspiracy to violate federal civil rights, Mr. Wilson-Walker must allege: (1) two or more persons conspired to deprive him of a constitutional right; (2) one or more of the co-conspirators performed or caused to be performed any overt act in furtherance of the conspiracy; and (3) the overt act injured Mr. Wilson-Walker in his person or property or deprived him of any right or privilege of a citizen of the United States.[64]

Mr. Wilson-Walker's allegations as currently pleaded fail to state a conspiracy to violate civil rights claim. Mr. Wilson-Walker does not identify another person who allegedly conspired with Captain Smith, an overt act in furtherance of the conspiracy, or injuries. We dismiss Mr. Wilson-Walker's conspiracy claim against Captain Smith.

### D. We dismiss claims against Major Moyer, Lt. Stabile, and Corrections Officer Gambone based on verbal threats and intimidating looks.

Mr. Wilson-Walker alleges threats and intimidating looks by Major Moyer, Lt. Stabile, and Corrections Officer Gambone violated his Eighth and Fourteenth Amendment rights: (1) Corrections Officer Gambone stood in Captain Smith's office during the July 24, 2024 meeting "looking me dead in my eye with a[n] evil look intimidating me [and] making me fear for my life remembering his face";[65] (2) at the meeting in Major Moyer's office on August 28, 2024, after Law Librarian DiAngelo gave Major Moyer a copy of Mr. Wilson-Walker's complaint, Major Moyer yelled and cursed at Mr. Wilson-Walker, threatened to put Mr. Wilson-Walker in "max confinement to rot" to prevent him from access to the law library, and demanded Mr. Wilson-Walker deny "on camera" sexual assault by Corrections Officer Gambone;[66] and (3) Lt. Stabile threatened Mr. Wilson-Walker with physical harm at the August 28, 2024 meeting in Major Moyer's office.[67]

We addressed these same allegations in our memorandum screening and then dismissing Mr. Wilson-Walker's original complaint. Mr. Wilson-Walker again claims Corrections Officer Gambone, Major Moyer, and Lt. Stabile intimidated him with "evil" looks and verbal threats for reporting and filing a complaint challenging Corrections Officer Gambone's alleged sexual harassment during intake. Allegations of verbal abuse or threats, absent injury or damage, are not cognizable claims under section 1983.[68] We dismiss claims based solely on allegations of verbal abuse or threats by Corrections Officer Gambone, Major Moyer, or Lt. Stabile.

### E. We dismiss the First Amendment retaliation claim and access-to-court claim against Major Moyer.

Mr. Wilson-Walker alleges Major Moyer threatened to put Mr. Wilson-Walker in "max confinement to rot" and to prevent use of the law library in retaliation for reporting Corrections

11

Officer Gambone. We liberally construe this allegation as a First Amendment retaliation claim. To state a First Amendment retaliation claim, Mr. Wilson-Walker must allege (1) he engaged in constitutionally protected activity; (2) adverse action sufficient to deter a person of ordinary firmness in exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and retaliatory action.[69]

Mr. Wilson-Walker alleges he prepared a complaint in the law library around August 28, 2024, Law Librarian DiAngelo made a copy of the complaint and gave it to Major Moyer, Major Moyer threatened Mr. Wilson-Walker with "max confinement," and Mr. Wilson-Walker, as of his December 13, 2024 amended Complaint is "currently … housed" in "max custody with no access to law library or the courts."[70] Mr. Wilson-Walker sufficiently pleads the first element because filing a lawsuit is constitutionally protected conduct.[71]

Mr. Wilson-Walker sufficiently pleads the second element by alleging placement in "max confinement." Our Court of Appeals considers "several months in disciplinary confinement" and "placement in administrative segregation that severely limit[s] access to the commissary, library, recreation, and rehabilitative programs" are, in the prison context, sufficiently adverse to deter a person of ordinary firmness from engaging in protected activity.[72]

The third element requires constitutionally protected conduct is causally related to the retaliatory action. So, Mr. Wilson-Walker must allege facts allowing us to plausibly infer (1) an unusually suggestive temporal proximity between his protected activity and the alleged retaliatory actor; or (2) a pattern of antagonism coupled with timing.[73] Mr. Wilson-Walker alleges on the day he went to the law library for copies of his complaint, Law Librarian DiAngelo made a copy and gave it to Major Moyer who, the same day, threatened to put Mr. Wilson-Walker in max confinement "to rot" and to prevent access to the law library. Mr. Wilson-Walker alleges "they"

12

currently house him in max custody with no access to the law library. But we do not know when the transfer to max custody occurred in relation to the August 28, 2024 law library incident. We cannot infer an unusually suggestive temporal proximity without allegations of timing – we cannot infer facts.

We liberally construe Mr. Wilson-Walker's allegation Major Moyer put him in max confinement to prevent access to the law library "to proceed with these claims" as an access-to-court claim.[74] As earlier explained to Mr. Wilson-Walker, an access-to-courts claim may proceed in two types of cases: (1) challenges – direct or collateral – to their sentences; or (2) conditions of confinement.[75] And in these two types of cases, an incarcerated person claiming a prison official's actions prevented him from presenting a past legal claim must show (1) he suffered "actual injury," meaning he "lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim"; and (2) he has no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access claim.[76] An incarcerated person must allege the "underlying arguable claim well enough to show that it is 'more than mere hope,' and … must describe the 'lost remedy.'"[77] Mr. Wilson-Walker does not allege how placement in max confinement caused him lose a remedy or claim either in his underlying criminal action or this case.

### F. We dismiss undeveloped claims under Rule 8.

Mr. Wilson-Walker alleges a variety of facts involving non-parties and unidentified parties and makes allegations against named parties having no plausible constitutional basis:

- Corrections Officer Gambone "put papers in front of me without giving me the chance to ream them and him not explaining what I am signing and just had me sign where he instructed me to sign and date";[78]

- Non-party social worker Carey did not give Mr. Wilson-Walker a grievance form for days, requiring him to handwrite his own grievance;[79]

13

- Unidentified "security supervisors" failed to update Mr. Wilson-Walker "with what was taking place [and] how the incident will be handled moving forward so [Corrections Officer] Gambone don't try to harm me for reporting [Corrections Officer Gambone] to his supervisors";[80] and,

- Non-party Assistant Warden Burger ignored Mr. Wilson-Walker's claims.[81]

These allegations do not meet Rule 8 requiring Mr. Walker-Wilson plead fair notice of "what the … claim is and the grounds upon which it rests."[82] We cannot discern plausible claims based on these allegations even applying a liberal standard to pro se Mr. Wilson-Walker. We grant Mr. Wilson-Walker leave to amend to include claims against John Doe parties if he has a fact basis to do so.

### III. Conclusion

We liberally construed Mr. Wilson-Walker's amended Complaint. He does not state a claim. But we grant Mr. Wilson-Walker one last chance to plead his claims before dismissing claims against these correctional officers arising from the July 9, 2024 strip search and responses with prejudice.

---

[1] A docket search of Pennsylvania's Unified Judicial System shows Mr. Wilson-Walker is currently housed at the Montgomery County Correctional Facility awaiting trial on charges brought in Montgomery County. *See Commw. of Pa. v. Zunir A. Wilson-Walker*, CP-46-CR-0000337-2024 (Mont. Co.). Mr. Wilson-Walker does not plead his status as a pretrial detainee. We take judicial notice of the Montgomery County Court of Common Pleas docket showing Mr. Wilson-Walker awaiting trial on charges in Montgomery County.

[2] ECF 13 at 5, ¶¶ 1-4.

[3] *Id.* at 2, ¶ 1 and 5, ¶ 5.

[4] *Id.* at 5, ¶ 6.

[5] *Id.* at 5, ¶ 7.

[6] *Id.* at 5, ¶ 8.

[7] *Id.*

[8] *Id.* at 6, ¶ 10.

[9] *Id.* at 6, ¶¶ 11-12.

[10] *Id.* at 6, ¶ 13.

[11] *Id.*

[12] *Id.* at 6, ¶¶ 14-15.

[13] *Id.* at 6, ¶ 16.

[14] *Id.* at 4, ¶ 5 and at 7, ¶ 17.

[15] *Id.* at 7, ¶ 18.

[16] *Id.* at 7, ¶ 19.

[17] *Id.* at 8, ¶¶ 20-21.

[18] *Id.* at 8, ¶ 22.

[19] *Id.*

[20] *Id.* at 8, ¶ 23.

[21] *Id.*

[22] *Id.* at 8, ¶ 24.

[23] *Id.* at 8, 9, ¶¶ 25-26.

[24] *Id.* at 3, ¶ 1 and at 9, ¶ 27.

[25] *Id.* at 9, ¶ 28.

[26] *Id.* at 9, ¶ 29.

[27] *Id.* at 9, ¶ 32.

[28] *Id.* at 9, ¶ 31.

[29] Mr. Wilson-Walker does not identify requested relief in his amended Complaint. *See* ECF 13. We assume Mr. Wilson-Walker seeks $465,000 in money damages as demanded in his original Complaint. *See* ECF 1 at 5, § V. Mr. Wilson-Walker first identified Major Moyer as "Major

Moryer," law librarian Keeley DiAngelo as "Kealey," and Lieutenant Stabile as "CERT Sgt. Stabile." *Compare* ECF 1 *with* ECF 13. We today refer to these officers as Major Moyer, Law Librarian DiAngelo, and Lt. Stabile as now-identified by Mr. Wilson-Walker in his amended Complaint.

[30] 28 U.S.C. § 1915A(a).

[31] *Id.* § 1915(e)(2)(B)(i)-(iii).

[32] *Elansari v. Univ. of Pa.,* 779 F. App'x 1006, 1008 (3d Cir. 2019) (citing *Allah v. Seiverling,* 229 F.3d 220, 223 (3d Cir. 2000)). A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[34] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[35] *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).

[36] *Id*. (quoting *Iqbal*, 556 U.S. at 668).

---

[37] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (first quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011); then citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

[38] *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala*, 704 F.3d at 244). Under Rule 8(e), "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). We are directed by our Court of Appeals this liberal standard is "even more pronounced" where, as here, a plaintiff files a complaint pro se, without assistance of counsel, to "protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (first quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); then citing *Higgs*, 655 F.3d at 339).

[39] *Yogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).

[40] Mr. Wilson-Walker does not specify whether he is suing the correctional officers in their official or individual capacities. We dismiss the official capacity claims if Mr. Wilson-Walker intended to sue the officers in their official capacities. Claims against the Facility's officers are claims against the Facility itself. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). We already explained to Mr. Wilson-Walker the Facility is not a "person" capable of being sued within the meaning of 28 U.S.C. § 1983. *Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (per curiam) (affirming dismissal of claims against a county prison because the prison is not a person capable of being sued under section 1983) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)); *see also Mercer-Spencer v. Spencer*, No. 24-834, 2024 WL 1704702, at *2 (E.D. Pa. Apr. 19, 2024) (dismissing with prejudice claims against Berks County Jail System because it is not a "person" under section 1983) (collecting cases); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009) (a prison or correctional facility is not a "person" subject to suit under federal civil rights laws) (collecting cases). We will consider Mr. Wilson-Walker's claims asserted against the Defendants in their individual capacities.

[41] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Section 1983 provides, in relevant part: "Every person who, under color of any statute … of any State …, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …." 42 U.S.C. § 1983.

[42] *Schneyder v. Smith,* 653 F.3d 313, 319 (3d Cir. 2011).

[43] *See* ECF 1 at 12.

[44] The Fourth Amendment applies to a pretrial detainee's excessive force claim. *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021).

[45] *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015); *Jacobs*, 8 F.4th at 195.

[46] *Kingsley*, 576 U.S. at 397 (quoting *Graham*, 490 U.S. at 396).

[47] *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

[48] *Ricks v. Shover*, 891 F.3d 468, 475 (3d Cir. 2018) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

[49] *McIntyre v. Kellinger*, 741 F. App'x 891, 893 (3d Cir. 2018) (per curiam) (affirming summary judgment on Eighth Amendment sexual abuse claim based on routine body search).

[50] *Bell*, 441 U.S. at 560.

[51] *Id.* at 559.

[52] *Small v. Wetzel*, 528 F. App'x 202, 207 (3d Cir. 2013) (citing *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318 (2012)).

[53] *Florence*, 566 U.S. at 331-34.

[54] *Id.* at 334. A strip search may "refer simply to the instruction to remove clothing while an officer observes from a distance of, say, five feet or more; it may mean a visual inspection from a closer, more uncomfortable distance; it may include directing detainees to shake their heads or to run their hands through their hair to dislodge what might be hidden there; or it may involve instructions to raise arms, to display foot insteps, to expose the back of the ears, to move or spread the buttocks or genital areas, or to cough in a squatting position." *Id.* at 325.

[55] ECF 13 at 2.

[56] *Ricks*, 891 F.3d at 475-76.

[57] *Pickett v. Williams*, No. 23-1411, 2023 WL 3044589, at * 5 (E.D. Pa. Apr. 21, 2023) (dismissing Eighth Amendment for sexual abuse and harassment where allegations are based on lewd comments with no sexual contact) (collecting cases); *see also Chin v. Warfel*, No. 23-4220, 2024 WL 665536 at *4 (E.D. Pa. Feb. 15, 2024) (citing *Gibson v. Flemming*, 836 F. App'x 860, 863 (3d Cir. 2020) (per curiam) (affirming summary judgment in favor of corrections officers and prison officials on Eighth Amendment excessive force and sexual harassment claims)).

[58] *Sweet v. Miles*, No. 21-2885, 2021 WL 3537181 (E.D. Pa. Aug. 11, 2021). In *Sweet*, Judge Bartle dismissed a claim brought by a male pretrial detainee alleging a strip search conducted in the presence of a female officer, an officer laughing at the detainee during the strip search, an officer making comments about the detainee's genitals, and an officer touching the detainee's anus violated the Eighth Amendment. *Id.* at * 3 (collecting cases).

[59] ECF 13 at 4, ¶ 5.

[60] In our earlier memorandum, we explained to Mr. Wilson-Walker his allegations he told Facility officials he did not feel safe may be pleaded as a failure-to-protect claim if the facts and present

risks confirm, after exhausting his internal grievance process, support such a claim. *See Wilson-Walker v. Gambone*, No. 24-4828, 2024 WL 4438774, at *3, n.28 (E.D. Pa. Oct. 7, 2024). We construe Mr. Wilson-Walker's new allegations against Captain Smith as a failure-to-protect claim.

[61] *Moore v. Mann*, 823 F. App'x 92, 95–96 (3d Cir. 2020) (citing *Hamilton v. Leavy*, 117 F.3d 742, 747 (3d Cir. 1997)).

[62] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[63] ECF 13 at 4, ¶ 5.

[64] *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94, n.15 (3d Cir. 2018) (quoting *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)).

[65] ECF 13 at 6, ¶ 15.

[66] *Id.* at 8, ¶¶ 23-28, 30.

[67] *Id.* at 9, ¶ 29.

[68] *Brown v. Hamilton Twp. Police Dep't Mercer Cnty., N.J.*, 547 F. App'x 96, 97 (3d Cir. 2013).

[69] *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

[70] ECF 13 at 9, ¶¶ 27-32.

[71] *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

[72] *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (first citing *Mitchell*, 318 F. 3d at 530; then citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); and then citing *Seiverling*, 229 F.3d at 225 –26).

[73] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[74] ECF 13 at 9, ¶ 27,

[75] *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)).

[76] *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

[77] *Id.* at 205–06 (quoting *Christopher*, 536 U.S. at 416–17) (footnote omitted).

[78] ECF 13 at 5, ¶ 6.

[79] *Id.* at 6, ¶¶ 10-12.

---

[80] *Id.* at 7, ¶ 19.

[81] *Id.* at 9, ¶ 31.

[82] *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555).